IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MATTHEW FOOSANER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:22-cv-521 (RDA/JFA) |
| | ) |
| CROWN CASTLE USA, INC., | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Crown Castle USA, Inc.'s Motion to Dismiss for Failure to State a Claim ("Motion"). Dkt. 13. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendants' Memorandum in Support (Dkt. 14), Plaintiff Matthew Foosaner's ("Plaintiff") Opposition (Dkt. 19), and Defendants' Reply (Dkt. 22), this Court DENIES the Motion for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

Plaintiff Matthew Foosaner alleges one count of retaliation against Defendant pursuant to the Defense Contractor Whistleblower Protection Act, 10 U.S.C. § 4701, *et seq.* (the "DCWPA"). In sum, Plaintiff asserts that he was terminated in retaliation for making disclosures protected under the DCWPA to management officials or other employees who had a duty to investigate,

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

discover, or address such alleged misconduct. Dkt. 11 ¶¶ 42-43. Plaintiff refers to those managers and employees as "Responsible Management Officials" or "RMOs." *Id.* ¶ 18.

Plaintiff applied to be Director of Federal Sales for Defendant and, on September 28, 2018, he interviewed for the position. *Id.* ¶¶ 17-18. Michelle Kavey, the Head of Government and Education, interviewed Plaintiff and informed Plaintiff that Defendant sold products to government agencies and to contractors that supported those government agencies, including fiber optic communication circuits sold to the Defense Information Services Agency ("DISA"). *Id.* ¶ 18. During his interview, Plaintiff mentioned the importance of complying with Defense Federal Acquisition Regulations ("DFARS"), including DFARS § 252.204-7012,[2] and noted his prior employment experience involving DFARS compliance. *Id.* Plaintiff told Kavey that, "if the Defendant was not complian[t] with the DFARS, the Defendant was not authorized to sell to US [sic] agencies that are subject to the DFARS." *Id.* ¶ 19. Kavey told Plaintiff that, if Plaintiff was hired, DFARS compliance would not be one of his responsibilities. *Id.* ¶ 20.

On October 16, 2018, Defendant asked Plaintiff to present himself to a panel as part of the ongoing interview process. Dkt. 11, ¶ 21. Plaintiff gave a 20-page presentation on DFARS compliance requirements, including the mandatory nature of reporting and a reporting capability requirement for any service provider whose network carries "covered defense information." *Id.* ¶ 22. Plaintiff asserts that several RMOs attended his presentation, including: (i) Kavey; (ii) Herb Boynton, Head of Wholesale and Sales Engineering and Kavey's supervisor; (iii) Doug Turtz, Vice President of Sales and Kavey's second level supervisor; (iv) Eric Swanholm, Head of Financial Planning & Analysis; and (v) Jackie Sax, Human Resource Manager. *Id.* ¶ 23. Plaintiff

---

[2] DFARS § 252.204-7012 corresponds to 48 C.F.R. § 252.204-702 and regulates the safeguarding of covered defense information and cyber incident reporting.

2

recommended that Defendant seek outside legal advice to confirm the applicability of DFARS. *Id.*

On November 7, 2023, Plaintiff accepted the Director of Federal Sales position. *Id.* ¶ 25. On November 26, 2023, Plaintiff began his employment. *Id.* ¶ 26. That same day, Plaintiff participated in a call with Kavey, Senior Assistant General Counsel Natasha Ernst, and Deputy General Counsel Lisa Gugliada to review federal compliance regulations. *Id.* ¶ 26. During the call, Plaintiff was concerned that DISA was a current customer and that Defendant designed and serviced circuits to other contractors who integrated and resold those circuits to other Agencies. *Id.* ¶ 27. Plaintiff informed the participants that Defendant, as a subcontractor, was required to be compliant with DFARS § 252.204-7012 and the participants stated that they were unfamiliar with the DFARS regulation. *Id.* ¶¶ 27-28.

On November 27, 2018, during a sales meeting, Plaintiff informed sales representatives and unidentified RMOs that certain contracts were required to comply with DFARS and that he was concerned that Defendant was not complying with DFARS § 252.204-7012. *Id.* ¶ 29. Kavey told Plaintiff: "Matt, you need to stop talking to people about this compliance stuff. You are scaring people." *Id.*

On November 30, 2018, Kavey instructed Plaintiff to prepare an executive briefing regarding DFARS § 252.204-7012 for Boynton. *Id.* ¶ 30. On December 4, 2018, Plaintiff presented to Kavey and Boynton regarding DFARS § 252.204-7012. *Id.* ¶ 32. During the presentation, Boynton asked why subcontractors are included and Plaintiff responded that the government's cyber security concerns also implicate subcontractors. *Id.* ¶ 33. At the conclusion of the meeting, Plaintiff was authorized to engage with Ernst to obtain quotes from vendors to address compliance. *Id.* ¶ 34. Plaintiff and Ernst scheduled a meeting for December 11, 2018. *Id.*

On December 5, 2018, one of Defendant's sales representatives invited Plaintiff to attend a meeting at DISA. *Id.* ¶ 37. On December 6, 2018, Plaintiff again raised concerns regarding compliance issues, including DFARS § 252.204-7012, with Hurwitz. *Id.* ¶ 38. Plaintiff also noted that he was meeting with Ernst on December 11, 2018 and that he would be attending a meeting with DISA on December 7, 2018. *Id.* On December 7, 2018, Plaintiff was terminated by Kavey and Sax, who stated that they were terminating him "for cause" based on allegation of unprofessional behavior. *Id.* ¶ 40.

### B. Procedural Background

On April 17, 2019, Plaintiff filed a whistleblower reprisal complaint with the Department of Defense ("DoD") Office of Inspector General by calling the DoD hotline. Dkt. 11 ¶ 11. Thereafter, Plaintiff participated in conversations with investigators and interviews regarding Plaintiff's allegations. *Id.* ¶¶ 12-14. On May 13, 2020, Plaintiff receive a closure letter from DoD. *Id.* ¶15.

Plaintiff filed his Complaint on May 10, 2022. Dkt. 1. On July 12, 2022, Plaintiff filed his first Amended Complaint. Dkt. 4. On August 2, 2022, Plaintiff filed his second Amended Complaint. Dkt. 11. On September 15, 2022, Defendant filed the instant Motion, along with a Memorandum in Support. Dkts. 13, 14. On September 29, 2022, Plaintiff filed his Opposition to the Motion, Dkt. 19, and, on October 22, 2022, Defendant filed a Reply, Dkt. 22.

## II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

The DCWPA protects employees of federal contractors from retaliation where an employee has made a disclosure of certain statutorily defined information. The parties agree that the relevant portion of the DCWPA provides:

> An employee of a contractor or subcontractor may not be discharged . . . as a reprisal for disclosing . . . information that the employee reasonably believes is evidence of . . . a violation of law, rule, or regulation related to a Department contract . . . [where that disclosure is made to a] management official or other employee of the contractor or subcontractor who has the responsibility to investigate, discover, or address misconduct.

10 U.S.C. § 4701(a). The parties further agree that *Greer v. Gen. Dynamics Info. Tech., Inc.*, 808 F. App'x 191, 193 (4th Cir. 2020) provides the applicable test for a motion to dismiss a DCWPA claim. *See* Dkt. 14 at 8; Dkt. 19 at 6. In *Greer*, the Fourth Circuit held that, "to survive a motion to dismiss, [the plaintiff's] DCWPA claim must allege facts sufficient to plausibly show that he engaged in a protected disclosure, that his employer was on notice of that disclosure, and that, as

5

a result of the disclosure, he was subjected to an adverse employment action." *Id.* at 193.

### III.  ANALYSIS

Defendant argues that Plaintiff fails to state a plausible DCWPA claim because: (i) Plaintiff fails to allege that he engaged in a protected disclosure; (ii) Plaintiff fails to allege that he made any disclosure to a person or body enumerated in the DCWPA; and (iii) Plaintiff fails to allege facts that support an inference that Plaintiff's disclosures contributed to Defendant's decision to discharge him.  For the reasons discussed below, each of these arguments fails and the Motion will be denied.

#### A.  Plaintiff Alleges that He Engaged in a Protected Disclosure

Defendant's first argument is that Plaintiff fails to allege that he engaged in a disclosure protected by the DCWPA.  More specifically, Defendant argues that Plaintiff fails to allege that he made "any *new* disclosures *after* becoming an employee." Dkt. 14 at 9 (emphasis added).  In this regard, Defendant makes a somewhat circular argument; namely, Defendant argues that any disclosure Plaintiff made before being hired is not protected because Plaintiff was not an employee, but Defendant also argues that any disclosure Plaintiff made after being hired is not protected because it was not new or different from the disclosures made during the interview process. *Id.* This argument fails.

To begin with, Defendant's argument is devoid of any citation to case or statutory authority that supports its position that an employee loses statutory protection by making disclosures, which would otherwise be protected, during the interview process.  Nor would such a rule make sense as it would discourage individuals from raising concerns at the first available opportunity.  In any event, as the Amended Complaint makes clear, Plaintiff did *not* make disclosures during the interview process.  Rather, Plaintiff's Amended Complaint alleges that, during the interview

6

process, Plaintiff informed Kavey: "*if* the Defendant was not compliant with the DFARS, the Defendant was not authorized to sell to US agencies." Dkt. 11 ¶ 19 (emphasis added). Similarly, during his interview presentation, Plaintiff recommended that Defendant seek outside legal advice to confirm the applicability of DFARS to Defendant. *Id.* ¶ 23. Thus, Plaintiff was not making a protected disclosure during his interviews but was merely suggesting that Defendant might benefit from investigating or obtaining legal advice.

It is only *after* Plaintiff became an employee, thereby gaining access to additional information from Defendant and protection under the DCWPA, that Plaintiff's statements become more definitive and fall into the category of disclosing information that an employee believes is evidence of "a violation of law, rule, or regulation." 10 U.S.C. § 4701(a). As the Amended Complaint alleges, on November 26, 2018, Plaintiff advised Kavey, the Deputy General Counsel, and a Senior Assistant General Counsel that Defendant was required to comply with DFARS and that Defendant appeared to not be in compliance, given that those involved in the call were unfamiliar with DFARS. Dkt. 11 ¶¶ 26-28. Again, on a sales call on November 27, 2018, Plaintiff alleges that he informed various persons that Defendant was required to comply with DFARS and appeared not to be complying. *Id.* ¶ 29. On December 4, 2018, Plaintiff alleges that he informed the Head of Wholesale and Sales Engineering that Defendant was required to comply with DFARS and appeared not to be complying. *Id.* ¶¶ 32-34. Finally, on December 6, 2018, Plaintiff repeated his concerns regarding DFARS compliance to the Regional Vice President of Sales and notified that individual of Plaintiff's upcoming meeting at DISA. *Id.* ¶ 38. The next day, Plaintiff was terminated. *Id.* ¶ 40.

Neither party cites case law specifically addressing the question of whether Plaintiff's statements on November 26, 2018, December 4, 2018, and December 6, 2018 qualify as protected

7

disclosures. In *United States ex rel. Cody v. ManTech Int'l, Corp.*, 746 App'x 166 (4th Cir. 2018), the Fourth Circuit held that there was sufficient evidence to establish a *prima facie* case of retaliation under the DCWPA where the plaintiffs were "questioning of the reliability and accuracy" of a government contract bid. Here, Plaintiff, at a minimum, alleges a similar questioning of Defendant's compliance with federal regulations and, in fact, appears to have gone farther than the plaintiffs in *Cody* to inform Defendant that it was violating DFARS. The district court in *Cody* described the plaintiff's burden as putting "an employer on reasonable notice that the employee is bringing to its attention conduct that qualifies as a protected activity." *United States ex rel. Cody v. ManTech Int'l Corp.*, 207 F. Supp. 3d 610, 622 (E.D. Va. 2016). Again, Plaintiff here has met that burden because, as alleged in the Amended Complaint, Plaintiff clearly conveyed to various high-ranking employees at Defendant that Defendant was required to comply with DFARS and that Defendant was not complying with DFARS. Accordingly, Plaintiff plausibly alleges facts demonstrating that he engaged in a protected activity and Defendant's argument in this regard fails.

B. Plaintiff Alleges that He Made Protected Disclosures to a Responsible Person

Defendant next argues that Plaintiff fails to allege that Plaintiff made a protected disclosure to a management official or other employee who has the responsibility or duty to investigate, discover, or address misconduct as required by the statute. Dkt. 14 at 11. In particular, Defendant argues that Plaintiff fails to allege that any of the persons with whom he spoke regarding DFARS compliance was a person responsible for investigating, discovering, or addressing misconduct. *Id.* at 12. Although Defendant may conceivably be able to prove at summary judgment that the persons to whom Plaintiff spoke did not have a responsibility to investigate, Plaintiff has alleged sufficient facts for the Court to reasonably infer that the persons to whom he reported his concerns

were "responsible" within the meaning of the DCWPA.

Importantly, Plaintiff alleges that, after he was hired, he made his disclosures to senior persons employed by Defendant including: (i) the Head of Government and Education; (ii) the Head of Wholesale and Engineering; (iii) the Deputy General Counsel; (iv) the Senior Assistant General Counsel; and (v) the Regional Vice President of Sales. Dkt. 11 ¶¶ 26, 32, 38. Moreover, after Plaintiff made initial disclosures in November 26, 2018, the following actions occurred: (i) the Head of Government and Education (Kavey) directed Plaintiff to present on DFARS to Kavey and the Head of Wholesale and Engineering (Boynton); (ii) Boynton then directed Plaintiff to meet with the Senior Assistant General Counsel (Ernst) regarding addressing DFARS compliance; and (iii) Ernst then directed Plaintiff to engage with compliance consultants. Dkt. 11 ¶¶ 30-35.[3] Each of those persons took steps "to investigate, discover, or address" the alleged misconduct when Plaintiff informed him or her of the potential DFARS violations. 10 U.S.C. § 4701(a)(2)(G). Thus, the facts alleged, create a reasonable inference that, at a minimum, Kavey, Boynton, and Ernst were responsible persons within the meaning of the DCWPA. *See Iqbal*, 556 U.S. at 678 (holding that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").[4]

---

[3] For purposes of this analysis, the Court does not consider the import of Plaintiff's November 27, 2018 conversations with sales personnel and persons that Plaintiff simply identifies as "RMOs." Dkt. 11 ¶ 29. Plaintiff's allegation that the persons attending the sales meeting were RMOs is conclusory absent any factual information about their name, title, and position. *See Iqbal*, 556 U.S. 678 (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

[4] Once again, there appears to be a dearth of case authority on this point and the parties cite none. However, applying principles of common sense and drawing all inferences in favor of Plaintiff, Plaintiff has satisfied the *Iqbal/Twombly* standard of plausibly alleging facts to support his claim for relief. Not only do the titles of those to whom Plaintiff made disclosures reveal their responsibility and authority, but many of those persons actually took steps indicating that they viewed themselves as having a responsibility to investigate, discover, or address Defendant's alleged violations of DFARS.

Accordingly, Defendant's argument in this regard also fails.

### C. Plaintiff Alleges Facts Supporting Causation

Finally, Defendant argues that Plaintiff fails to allege sufficient facts to support a plausible inference that Plaintiff's discharge was causally related to his protected disclosures. Defendant asserts: first, that Plaintiff cannot demonstrate causation because Plaintiff was rewarded for making his disclosures, rather than punished; and, second, that Plaintiff cannot demonstrate causation because the same actors who hired Plaintiff also fired Plaintiff. Neither argument is persuasive. It is difficult to see how Plaintiff was rewarded for making his disclosures where Defendant fired Plaintiff after a mere eleven days on the job. Moreover, DCWPA claims are not the kinds of cases to which the same-actor doctrine easily applies.

To begin with, it is important to note that the standard applicable to causation for DCWPA claims is a "contributing factor" standard. *Cody*, 746 F. App'x at 178. As the Fourth Circuit has explained, a "contributing factor is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Id.* Plaintiff clearly alleges facts that satisfy this standard. First, Plaintiff alleges statements by Kavey, one of the decisionmakers, which suggest that Plaintiff was terminated in retaliation for his protected disclosures. Plaintiff alleges that when he first raised concerns regarding the application of DFARS during the interview process, Kavey told him that DFARS compliance would not be one of his responsibilities. Dkt. 11 ¶ 20. When Plaintiff continued to discuss DFARS compliance after he was hired, Kavey warned Plaintiff to "stop talking to people about this compliance stuff" because he was "scaring people." *Id.* ¶ 29. After Plaintiff continued to raise his concerns regarding DFARS to various employees, Kavey terminated Plaintiff. *Id.* ¶ 30. Second, Plaintiff alleges facts showing a temporal connection that supports causation. Plaintiff was fired ten days after Kavey told Plaintiff to "stop talking"

about DFARS. Plaintiff was also fired mere hours after Plaintiff informed the Regional Vice President of Sales that Defendant was allegedly violating DFARS and that Plaintiff was scheduled to meet with DISA, a customer, on the same day that Plaintiff was fired. *Id.* ¶¶ 38-40. These factual allegations are sufficient to plausibly allege causation at the pleading stage. *See Strothers v. City of Laurel, Md.*, 895 F.3d 317, 337 (4th Cir. 2018) (holding, in the employment discrimination context, that "the lapse of one or even nine days is well-within what this Court has found to be a causally significant window of time").[5] Thus, at this early pleading stage, the Court has little difficulty finding that Plaintiff has plausibly alleged facts establishing causation.

Despite these allegations and Plaintiff's ultimate termination, Defendant argues that Plaintiff was rewarded for his disclosures by being hired and by being permitted to present on DFARS issues. *See* Dkt. 14 at 13. As previously discussed, however, Plaintiff could not and did not make a protected disclosure until after he was hired. Instead, during his interview, Plaintiff only noted the "potential" application of DFARS regulations and advised Defendant to seek legal advice. *See* Dkt. 11 ¶¶ 18, 23. Moreover, Plaintiff alleges that Kavey specifically told Plaintiff that he would not be involved in DFARS compliance. Dkt. 11 ¶ 20. Thus, it is difficult to conclude that Plaintiff was rewarded for his conditional advice when he was specifically told that his DFARS experience would have no bearing on his job duties. Defendant also argues that being permitted to present on DFARS issues was a reward. Not so. There are no allegations in the Amended Complaint that support an inference that Plaintiff was rewarded; there are no allegations that Plaintiff received additional titles, compensation, or additional prestige for discussing DFARS. To the contrary, Plaintiff's immediate supervisor instructed Plaintiff to stop discussing

---

[5] The Fourth Circuit has looked to the burden-shifting framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), which applies to employment discrimination cases, to analyze claims under the DCWPA. *See Cody*, 746 F. App'x at 176.

DFARS compliance and, after informing the Regional Vice President of Sales that Plaintiff was going to make a presentation to a government customer, Plaintiff was terminated. This argument is therefore unpersuasive.[6]

Defendant also argues that the same-actor doctrine from the employment discrimination context should be imported to DCWPA claims. *See* Dkt. 14 at 14. In the employment discrimination context, the Fourth Circuit has held that "in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor." *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991). This is so because, for the most part, the characteristics protected by the employment discrimination statutes are visible at hiring. In other words, the person doing the hiring does so "with full knowledge of [the protected characteristic]." *Id.* Defendant cites no Fourth Circuit cases extending the same actor inference to retaliation claims, where the existence of a protected activity cannot be known beforehand, and no Fourth Circuit cases extending the doctrine to that context could be found. There are good reasons not to extend this doctrine beyond the discrimination context.[7] With respect to DCWPA retaliation claims, as with other retaliation claims, an employer cannot know at hiring that an employee will

---

[6] In support of its argument, Defendant cites *Brach v. Conflict Kinetics Corp.*, 2017 WL 3267961, at *16 (E.D. Va. July 31, 2017). In *Brach*, the court held that, at summary judgment, causation was "flatly contradicted" by evidence that the plaintiff continued to be employed "for months" after making his protected disclosures and by evidence that the defendant "took seriously" plaintiff's recommendations. *Id.* By contrast, this case is at the initial pleading stage, Plaintiff was fired after only eleven days, and there is no allegation that Defendant corrected any of the issues identified by Plaintiff. Thus, *Brach* is inapposite.

[7] Indeed, at least four judges on the Fourth Circuit believe that the "same actor inference" should not be extended beyond the context of termination claims like *Proud*. *See Taylor v. Va. Union Univ.*, 193 F.3d 219, 246 (Murnaghan, J., dissenting, joined by Judges Michael, Motz, and King) (stating that the same actor inference does not apply with equal force outside of the circumstances of *Proud*).

make a protected disclosure. Thus, there is no basis for an inference that the person who hired and then fired that employee had no retaliatory animus. This is especially true here, where Kavey had no reason to anticipate that Plaintiff would make protected disclosures once hired because DFARS compliance would not be part of his job duties. Moreover, the Amended Complaint warrants an inference of animus based on Plaintiff's DCWPA disclosures where Kavey explicitly instructed Plaintiff to "stop talking" about DFARS compliance.[8] Accordingly, the same-actor inference does not apply to these circumstances and does not undermine the inference of causation created by the facts alleged in the Amended Complaint.

\* \* \*

In sum, Plaintiff has alleged facts sufficient to support each element of the *prima facie* case established by the Fourth Circuit in *Greer*. Moreover, Plaintiff's allegations regarding Kavey's statements and regarding temporal proximity create a reasonable inference that Plaintiff's protected disclosures contributed to his termination. Defendant's arguments to the contrary are, once again, unpersuasive. Accordingly, the Motion will be denied.

## IV.  CONCLUSION

For the reasons articulated in this opinion, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 13) is DENIED.

The Clerk is directed to forward this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia  
August 23, 2023

/s/  
Rossie D. Alston, Jr.  
United States District Judge

---

[8] The Fourth Circuit has held that the *Proud* inference loses force where "plaintiff presents sufficiently compelling evidence of discrimination," such as statements from the decisionmaker. *Adams v. Greenbrier Oldsmobile/GMC/Volkswagen, Inc.*, 172 F.3d 43, 1999 WL 34907, at *6 (4th Cir. 1999) (Unpublished Table Decision).